## ALBRIGHT v CITY OF PORTAGE

Docket No. 121750. Submitted November 6, 1990, at Grand Rapids. Decided April 2, 1991, at 9:00 A.M. Leave to appeal sought.

Harry W. Albright, Jr., brought an action in the Kalamazoo Circuit Court against the City of Portage, seeking an injunction and a declaratory judgment to prohibit a referendum regarding whether a Portage ordinance which had rezoned his property from single family residential use to residential and nonresidential use should be repealed. The court, John F. Foley, J., refused to issue a preliminary injunction, and a referendum was held, resulting in the repeal of the ordinance and the reinstatement of the zoning of the plaintiff's property to single family residential use. The plaintiff thereafter amended his complaint to allege that the single family residential zoning classification was unreasonable, arbitrary, and discriminatory, that he was deprived of the use of his property without due process of law, that his property was taken without just compensation, and that the referendum was invalid. The court granted summary disposition for the defendant. The plaintiff appealed.

The Court of Appeals *held:*

The enactment by a municipality of an amendatory zoning ordinance is a legislative act which can be subjected to referendum.

1. The home rule cities act, MCL 117.4i(6); MSA 5.2082(6), provides a right of referendum regarding city ordinances. The charter of the City of Portage, a home rule city, specifically provides that electors may secure a referendum with regard to any ordinance by petition. The referendum provisions of the home rule cities act do not conflict with the protest petition provisions of the city or village zoning act, MCL 25.584(5); MSA 5.2934(5). Moreover, the Michigan Supreme Court has determined that zoning ordinances are legislative acts which can be

REFERENCES

Am Jur 2d, Initiative and Referendum § 12; Zoning and Planning §§ 7, 18.

Adoption of zoning ordinance or amendment thereto as subject of referendum. 72 ALR3d 1030.

subjected to referenda. The trial court in this case therefore did not err in dismissing that part of the plaintiff's complaint which challenged the electors' right of referendum with regard to the disputed ordinance.

2. The provision of the Portage city charter requiring that a referendum petition be signed by not less than ten percent of the registered electors of the city who voted in the last regular city election does not require that the petition be signed by at least ten percent of those electors who actually voted in the prior election, but rather that the number of signatures be at least ten percent of the number of electors who voted in the election.

3. The trial court did not err in determining that the plaintiff's due process rights were not violated. The single family residential zoning of the plaintiff's property was not unreasonable, arbitrary, or capricious.

4. The plaintiff abandoned his claim for damages for the alleged taking of his property by voluntarily dismissing the claim in the trial court.

Affirmed.

ZONING — MUNICIPAL ORDINANCES — HOME RULE CITIES ACT — REFERENDA.

The enactment by a municipality of an amendatory zoning ordinance is a legislative act which can be subjected to referendum as permitted under the home rule cities act (MCL 117.4i[6]; MSA 5.2082[6]).

*Kreis, Enderle, Callander & Hudgins* (by *Alan G. Enderle, Douglas L. Callander,* and *Cynthia P. Ortega*), for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Marcia L. Howe*), for the defendant.

Amici Curiae:

*Honigman, Miller, Schwartz & Cohn* (by *Norman Hyman* and *Daniel P. Perk*), for Builders Association of Southeastern Michigan and Apartment Association of Michigan.

Before: NEFF, P.J., and MAHER and HOOD, JJ.

Per Curiam. The underlying facts in this zoning referendum case are not in dispute. Plaintiff purchased approximately sixty-five acres of unimproved wooded land in Portage, Michigan. The property had been classified since 1965 as R-1C, single family residential, and is surrounded by similarly zoned property, a church, and Interstate 94. In December 1986, plaintiff filed an application with defendant City of Portage, seeking to rezone a portion of his property to OS-1, office, in order to construct four office buildings. Although several advantages of the requested rezoning were noted, Brian Bowling, the director of development, recommended to the planning commission in February 1987 that the application be denied. On the basis of this recommendation, plaintiff withdrew his application.

In January 1988, plaintiff submitted another application, seeking to rezone the entire parcel to PD, planned development. A PD district would include residential and nonresidential development, while permitting the city to control the ultimate development of the parcel. Later that month, the new director of development, Jeffrey Erickson, recommended to the planning commission that plaintiff's application be denied on the basis of a variety of concerns arising from the proposed development. After plaintiff submitted an alternate plan which addressed these various concerns, Erickson recommended approval of the rezoning application.

On March 17, 1988, following an open meeting, the Portage Planning Commission voted to recommend that the city council deny plaintiff's alternate plan. On March 29, 1988, the city council amended plaintiff's plan to reduce the square footage available for office space, approved the amended version of plaintiff's alternate plan, and

adopted Ordinance 87-17, which rezoned the parcel to PD.

In April 1988, the property owners surrounding plaintiff's parcel petitioned the city council to repeal Ordinance 87-17 or to submit the issue for a vote by the city's electorate. The city council refused to repeal the ordinance, but adopted a resolution declaring that a special election would be held on July 11, 1988, to determine whether Ordinance 87-17 should be repealed.

Plaintiff filed a complaint in circuit court in June 1988, seeking a temporary restraining order, a permanent injunction, and a declaratory judgment to prohibit the referendum on the zoning amendment, claiming that such referenda were not permitted under Michigan law. On June 15, 1988, the circuit court denied the request for a preliminary injunction.

On July 11, 1988, the referendum was held and the electors voted to repeal Ordinance 87-17, thus returning plaintiff's property to the R-1C zoning classification.

Plaintiff amended his complaint in September, claiming that (1) the R-1C zoning was unreasonable, arbitrary, and discriminatory, (2) he had been deprived of the use of his property without due process of law, (3) his property had been taken without just compensation, and (4) the referendum was invalid.

In April 1989, plaintiff moved for summary disposition pursuant to MCR 2.116(C)(10). Defendant responded by contending that it, not plaintiff, was entitled to summary disposition. The circuit court agreed with defendant and dismissed plaintiff's amended complaint. The court found that plaintiff failed to meet his burden of proving that his substantive due process rights were violated because the R-1C zoning classification advanced rea-

sonable governmental interests. The court further concluded that an amendatory zoning ordinance was a legislative act subject to referendum and that a referendum was not prohibited by the city or village zoning act.[1] Lastly, the court determined that the referendum did not deny plaintiff any procedural due process rights. Plaintiff appeals as of right from the circuit court's order denying his motion for summary disposition and dismissing his complaint pursuant to MCR 2.116(I)(2).[2] We affirm.

I

The primary issue before this Court is whether an amendatory zoning ordinance is subject to referendum by the local electors. We answer this affirmatively.

The right of referendum with regard to city ordinances derives not from the Michigan Constitution, but from the home rule cities act. MCL 117.1 *et seq.*; MSA 5.2071 *et seq.*; *Korash v Livonia,* 388 Mich 737, 742, n 3; 202 NW2d 803 (1972). This act also grants a city the power to zone within its territory. MCL 117.4i; MSA 5.2082 provides in part:

Each city may in its charter provide:

\* \* \*

(3) For the establishment of districts or zones within which the use of land and structures, the height, the area, the size and location of buildings and required open spaces for light and ventilation of such buildings and the density of population may be regulated by ordinance. Such regulations in 1 or more districts may differ from those in other districts. . . .

---

[1] MCL 125.581 *et seq.*; MSA 5.2931 *et seq.*

[2] We have rearranged and consolidated plaintiff's issues on appeal.

. * * *

(6) For the initiative and referendum on all matters within the scope of its powers and for the recall of all of its officials.

Defendant, a home rule city, has provided for referenda in its city charter pursuant to MCL 117.4i(6); MSA 5.2082(6). Specifically, § 5.8 of defendant's charter provides:

The electors of the City may initiate any ordinance or secure a referendum on any ordinance by petition.

On appeal, plaintiff and amici curiae argue that this provision is insufficient to provide for referenda. Relying on *West v Portage,* 392 Mich 458; 221 NW2d 303 (1974), they contend that the zoning amendment was an administrative act, not subject to referendum.

Plaintiff and amici curiae are correct in that our Supreme Court addressed the identical issue in *West.* However, there was no majority opinion. Justice LEVIN, joined by Justices T. G. KAVANAGH and FITZGERALD, determined that zoning amendments were administrative acts and therefore were not a proper subject of referendum. *West, supra,* pp 465-472. Justice COLEMAN concurred only in the result reached by Justice LEVIN. *Id.,* p 472. Justice WILLIAMS, joined by Chief Justice T. M. KAVANAGH and Justice SWAINSON, determined that zoning amendments were subject to referendum, but that the petition in that case was defective because it also attempted to request an initiative, which was impermissible. *Id.,* pp 476-478.

In *Beach v Saline,* 412 Mich 729, 730, n 1; 316 NW2d 724 (1982), the Court noted that the *West* Court failed to reach a majority and therefore

Justice Levin's opinion was not binding. Nevertheless, the Court did adopt that portion of his opinion which determined that only legislative acts may be subject to referendum. *Beach, supra,* p 731. The issue in this case is narrowed to whether amendments of zoning ordinances are legislative or administrative acts.

We agree with defendant that our Supreme Court has since rejected Justice Levin's administrative approach to zoning amendments. In *Ed Zaagman, Inc v Kentwood,* 406 Mich 137; 277 NW2d 475 (1979), the Court formulated procedures which were to be followed after a zoning ordinance was judicially determined unconstitutional. Implicit in the Court's analysis was the recognition that zoning amendments are legislative acts. Although the *Zaagman* Court was not presented with the central issue we face in this case, the opinion clearly reflects the Court's disagreement with the foundation of Justice Levin's opinion in *West.* In fact, Justice Levin's opinion in *Zaagman* recognizes that the majority did not consider zoning changes as administrative acts. 406 Mich 188-189.

Plaintiff is correct that the Supreme Court subsequently repudiated the procedural approach formulated in *Zaagman* and thus effectively overruled that decision in *Schwartz v City of Flint,* 426 Mich 295; 395 NW2d 678 (1986). However, the opinion in *Schwartz* merely reformulated the remedial procedures on the premise that zoning powers are legislative functions. *Id.,* pp 307-309.

Before *Schwartz,* two panels of this Court also interpreted *Zaagman* as rejecting *West's* administrative analysis and declaring zoning changes as legislative acts. The Court therefore held that zoning amendments are subject to referendum. See *Jacobs, Visconsi & Jacobs Co v City of Burton,* 108 Mich App 497, 502-503; 310 NW2d 438 (1981), and

*Chynoweth v City of Hancock,* 107 Mich App 360, 361-362; 309 NW2d 606 (1981). Accordingly, we hold that zoning amendments are legislative acts subject to referendum.

In so holding, we reject the argument by plaintiff and amici curiae that a referendum regarding zoning amendments under the home rule cities act is precluded by the city or village zoning act. Plaintiff and amici curiae contend that because the city or village zoning act specifically permits concerned citizens to challenge a zoning amendment by initiating a protest petition,[3] the referendum provision in § 5.8 of defendant's charter is void under § 36 of the home rule cities act.[4]

Section 36 of the home rule cities act provides:

> No provision of the city charter shall conflict with or contravene the provisions of any general law of the state.

We note, however, that the city or village zoning act is silent with respect to the right of referendum regarding zoning amendments. This silence does not, therefore, lead to the conclusion that the right of referendum under the home rule cities act[5] is contrary to the protest petition provision in the city or village zoning act. The protest petition provision merely permits concerned citizens to challenge a proposed zoning amendment before final action by the city's legislative body.[6]

However, a referendum can only be conducted *after* the zoning amendment is adopted. Nothing in the city or village zoning act indicates that a protest petition is the exclusive avenue for chal-

[3] See MCL 125.584(5); MSA 5.2934(5).
[4] MCL 117.36; MSA 5.2116.
[5] See MCL 117.4i(6); MSA 5.2082(6).
[6] See MCL 125.584(5); MSA 5.2934(5).

lenging amendments of zoning ordinances. Therefore, we conclude that the right of referendum under the home rule cities act is not prohibited by the city or village zoning act by reason of § 36 as contended by plaintiff and amici curiae.

In conclusion, we find that the trial court did not err in dismissing that portion of plaintiff's complaint which sought to challenge the electors' right of referendum with regard to the zoning amendment ordinance.

## II

Plaintiff also challenged the propriety of the referendum, claiming that it was initiated without the requisite number of signatures for a valid petition. He relies on § 5.9 of defendant's charter, which provides:

An initiatory or a referendary petition shall be signed by not less than *ten per cent of the registered electors of the City who voted at the last regular City election* according to the records of the Clerk on the date the petition is filed. [Emphasis added.]

Plaintiff claims that the emphasized language requires the petition to be signed by those who actually voted in the prior election. We disagree.

We acknowledge that a strict literal reading of this ordinance could lead one to conclude that such a requirement exists. However, we find that such a reading is clearly inconsistent with the purposes and policies implicitly underlying this provision, and would lead to absurd and unjust results.[7] Therefore, we hold that § 5.9 of defen-

---

[7] We recognize that the rules of statutory construction also apply to govern the construction of ordinances. See *Settles v Detroit City Clerk*, 169 Mich App 797, 808; 427 NW2d 188 (1988). Therefore, where an ordinance is clear and unambiguous, we may not engage in

dant's charter does not require referendum petitions to be signed by those electors who *actually* voted in the prior city election, but rather requires the *number* of signatures to be at least ten percent of the *number* of registered electors who voted in the prior city election. We conclude that the trial court did not err in ruling that the referendum petition was not defective.

### III

Plaintiff next argues that the trial court erred in ruling that his substantive due process rights were not violated by the R-1C zoning classification.[8] He contends that this classification arbitrarily and capriciously excludes the legitimate use of his land under a PD zoning classification.

The standards for challenging a zoning ordinance were first discussed in *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974), and were summarized in *Kirk v Tyrone Twp,* 398 Mich 429, 439-440; 247 NW2d 848 (1976).

> The principles and tests to use to determine whether the present zoning of plaintiffs' property is valid was detailed in *Kropf.*
>
> The important principles require that for an ordinance to be successfully challenged plaintiffs, prove:
>
> "[F]irst, that there is no reasonable governmental interest being advanced by the present zoning classification itself . . . or
>
> "[S]econdly, that an ordinance may be unreasonable because of the purely arbitrary, capricious

judicial interpretation, unless the failure to do so would produce absurd and unjust results. In such instance, we may depart from a strict literal interpretation of the ordinance. *Oberlin v Wolverine Gas & Oil Co,* 181 Mich App 506, 511; 450 NW2d 68 (1989).

[8] We note that the parties agree that both R-1C and PD zoning classifications are legitimate uses of plaintiff's property.

and unfounded exclusion of other types of legitimate land use from the area in question." 391 Mich 139, 158.

The four rules for applying these principles were also outlined in *Kropf.* They are:

" '[1.] [T]he ordinance comes to us clothed with every presumption of validity.' " 391 Mich 139, 162, quoting from *Brae Burn; Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957).

" '[2.] [I]t is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property . . . . It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness.' " 391 Mich 139, 162, quoting *Brae Burn, Inc.*

"[3.] Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted." 391 Mich 139, 162-163.

" '[4.] This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases.' " 391 Mich 139, 163, quoting *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962).

On appeal, plaintiff relies only on the second principle, contending that the R-1C ordinance is unreasonable because the exclusion of other legitimate uses is arbitrary and capricious. This principle, if satisfied, is an independent basis upon which plaintiff could successfully challenge the R-1C zoning classification. See *Kropf, supra,* p 158.

We have reviewed the record and note that various departments of the defendant and the city council supported the rezoning of plaintiff's property to PD. However, the planning commission

recommended that the rezoning be denied on the basis of the negative effect which was likely to result from plaintiff's proposed development. This divergence indicates that there were legitimate differences of opinion concerning the proposed rezoning of the property. On the basis of this record, we conclude that plaintiff failed to overcome the presumption of validity attached to the R-1C zoning classification. Further, we find that plaintiff failed to meet his burden of proving that the R-1C zoning was an arbitrary fiat, a whimsical ipse dixit, and that there was no room for legitimate differences of opinion regarding the reasonableness of the R-1C classification. Therefore, the trial court did not err in ruling that plaintiff's substantive due process rights had not been violated.

V

Plaintiff's last claim is that the R-1C classification, which restricts the use of his property, constitutes a taking of his property without just compensation. In his amended complaint, plaintiff sought damages as a result of this alleged unconstitutional taking. Therefore, plaintiff argues that the trial court also erred in dismissing this portion of his complaint.

However, our review of the trial court order which granted summary disposition to defendant indicates that plaintiff had already voluntarily dismissed this count of his amended complaint. Therefore, we find that he has abandoned the issue on appeal. Regardless, plaintiff's claim of damages is based on the assumption that the R-1C zoning classification was arbitrary and capricious. It was not. Consequently, plaintiff's argument must fail. We find no error.

Affirmed.